Number 172179 Linnea Garcia-Tatupu v. Bert Bell, Pete Rozelle NFL Player Retirement Plan et al. I believe the issue before the court is relatively simple. Mr. Tatupu is the widow of a player who had received benefits and had played for the National Football League over a period of years. They were divorced in 1997. Mr. Tatupu died in 2010. Ms. Tatupu-Linnea, by name, to differentiate between the two of them, Linnea then applied for benefits from the pension fund and seeking disability and survival of the fittest. And the divorce decree that was entered between the parties at the time of their divorce, and that remained in effect at the time of his death, gave him the right, as between the spouses, gave him the right to elect the payment option and gave her one third of whatever benefits would be received after he elected the benefit option. That's correct. Well, why isn't that the end of the case? Well, because the end, well, there were perhaps other issues that are before this court that this case won't... If they're not before this court, I'm not interested in them. And I won't mention them. But... But, Your Honor, to answer your question, Your Honor, I think, is that she was to receive some benefits. Where does it say that? It says she was to receive one third of whatever benefits he elected and gave him the right to make that election. She could have bargained for a particular benefit, but she didn't. Well, Your Honor, the qualified domestic relations order that came into effect afterwards... Right. ...specifically said that she would be treated as a surviving spouse. I know that, but those orders, which were not accepted by the NFL, do not permit a retrospective increase in benefits. It may dictate who is entitled to receive benefits that are due, but there's nothing in ERISA which indicates that such orders can increase retrospectively the amount of benefits that the company is, or the pension fund, is obligated to pay. I mean, I'm not unsympathetic to your position, Mr. McCormick. I'm just struggling to discern a plausible rationale for it. Can you give me the single best case for your position? I don't have the single best case in the positions the decision of the NFL denying it, Your Honor. The single best reported case. Is there any reported case treating a post-mortem domestic relations order that increases the benefits that were due at the time of the pensioner's debt? I know of no case. As a qualified order. I haven't been able to find any such case. You certainly cite us to none in your brief. You cited the district court to none. I have not found a case in this circuit, Your Honor. The closest I could come is a Third Circuit-across-ExxonMobil case, Your Honor, that the Third Circuit reversed a district court decision interpreting a non-pro-tunk type of decision. That increased the benefits to the surviving spouse. I think it's unclear because the decision that I read remanded it back to the district court. Judge Lopez has a question for you. Counsel, how do you argue against the proposition that those post-mortem domestic relations orders did not, in effect, rewrite the 1997 marital separation agreement, which I believe is the point that Judge Selle was making? I find it hard to understand how they did not do exactly that. Well, Your Honor, I think you can distinguish whether what they... Do they rewrite... Excuse me, Your Honor. Do they rewrite the history in that it increases the benefits she didn't get necessarily, no matter what? Or does the quadro and the qualification bring a non-pro-tunk back to the date of divorce? Give her the rights of the surviving spouse. Now, we've stated, Your Honor, that we've included it in the appendix. Back in the Norfolk County Probate Court, it was specifically said because this was the intent of the parties and it was an inadvertence. And the question then is that I believe Judge Woodlark's decision is twofold. And part of it is that because she was not a surviving spouse at the time of Mr. Taputu's death. And in fact, if we looked at page 103 of the record appendix, the decision of the NFL clearly states that. There's no surviving spouse or surviving minor children. When in fact, and I take it the decision of the NFL is after the quadro is entered. States can enter domestic relations orders, but they cannot make them qualified if they are retroactively a grant of benefits. The Norfolk Probate Court, when it issued the first of the two orders, you submitted that to a probate court judge and he signed it, right? Yes, Your Honor. There were no proceedings whatsoever. So how can you say that the intent of the parties was to give her survivor benefits when that is not what the separation agreement and divorce said? Well, Your Honor, I would ask the court. Just because you go ex parte to the Norfolk Probate Court and put something in front of a harassed overworked judge and get it signed does not make it true. Well, this was not a harassed overworked judge now, Your Honor, because the judge assigned is now the chief justice of the probate court. So what, was it the judge who presided over the divorce? I believe it was, Your Honor, Judge Casey. And how many years later? It was approximate. Well, the divorce was effective in 1997. We were back in 2011 and 2012. Yeah, right. But Judge Casey had the file, Your Honor, and it was specifically said this was through inadvertence and this should have been included. It was said by whom? By you. By myself and an affidavit of Mrs. Titupu, which the judge accepted. But it wasn't an adversary proceeding. No, Mrs. Titupu. That's all after the fact. No, Your Honor, there was not an adversary proceeding. There was nobody there to oppose it. Mr. Titupu had been deceased at the time. But by way of background, and I don't think this is in the records. Well, were you counsel at the divorce? No. Okay. But I have to rescind that, Your Honor. My partner was, but represented at the time, Mr. Titupu. I won't even get into conflict of interest. They had all been signed waivers, Your Honor, a long time ago. Mrs. Titupu came to us trying to figure something out and we... Mr. Titupu came back from the grave and signed a waiver? No, Mrs. Titupu, Your Honor. Mrs. Titupu. She did, but he was dead. He couldn't sign a waiver. And suddenly you're acting against his interests, your law firm, and acting against the specific deal that he elected. Well, the other heirs, the children, also signed that, Your Honor. We were attempting to do something for Mrs. Titupu. She came to us. She was without funds. She didn't know anybody, and she came to us to try to clarify this, why wasn't this in here. If she needed funds, it seems to me you could have sold this script to Boston Legal. It might have been, Your Honor. I don't know who would have played whom. So I haven't focused on the children. Did they inherit something from their father? No. I have to take that back. I'm not sure. I don't believe that Mr. Titupu had much of an asset at all. We were not the personal representative of the estate. That was another person, and I think it was administrative estate. So the only deep pocket here is the NFL, and that's why you went against them? Well, I'm sure if they didn't have anything, we wouldn't go against them. But if the children have funds, they can provide funds to their mother. And I believe they have. At least there are two children. There's one daughter and there's one son. The son was an NFL player and has done that. But the fact of the matter is that when Mrs. Titupu went to the NFL, I was not representing her initially. And she came back, and the NFL wanted the Quadro, the pension funds. That's what precipitated going back to it. And that's what we did. And we think that their decision that she's not a surviving spouse requires that this then, in fact, when the Quadro comes in, whether it's an adverse hearing or not, it's a court order, and at least this should be subject to a remand to find out if she is a surviving spouse, if she is entitled to any benefits. Thank you for your time. Good morning. May it please the Court, Michael Junk for the Burt Bell-Pete Rozell NFL Player Retirement Plan. We just heard it. The arguments made by counsel are without precedent. That's something that I pointed out in our brief. I have a question which just occurred to me out of the colloquy. Assume you're quite right about the law, but suppose that before he died, there was a proceeding in the aftermath of the divorce in which she tried to reform the survivor benefits portion of it. And she says she testifies to the judge, it was my intention all along to get those survivor benefits. I know what the documents say, but really that was a mistake. And then suppose he was still there to testify and he agrees, or maybe he doesn't agree that the intent was that she get some survivor benefits. And he dies before the decision comes out, but the decision comes out after an adversary proceeding. And the court believes her and reforms the degree, reforms the election of benefits and says actually the intent was she gets the benefits and after an adversary proceeding, I find it. Let's assume he opposed it. Is that a quadro? I think that would be, first of all, as you recognize by the hypothetical, a much different case. Yes, obviously. I'm just thinking about the development of the law. And looking back at that hypothetical and those set of facts, I think there would be a much stronger argument there for Ms. Tatupu that that would be an enforceable domestic relations order as a quadro. But, of course, that's not even close to what we have here. Right. So counsel has admitted this argument is without precedent. I've pointed the court to precedent, a line of cases coming out of the Third Circuit. Samaru, as I call it, and I'm not sure if that's how you pronounce it, but I think it is, and Files. I think that's the Exxon case that counsel mentioned a minute ago. It actually cuts against his arguments here for these benefits on behalf of his client. What Samaru and Files tell us is that the rights of an alternate payee and the obligation of a plan should lapse and terminate with the participant's death. And that is a rule, a bright line rule, that I think can be applied because it balances several competing interests, the interests of spouses, ex-spouses, and survivors. My hypothetical raises the question of whether there should be always, in all circumstances, a bright line rule that as soon as he dies, it's fixed. Assume, in my hypothetical, he dies. The court decision then comes out. What happens to the bright line rule? Well, I think in line with some quadro guidance, there's guidance out there that says the timing of a quadro domestic relations order does not necessarily, that can be the sole reason that it would not qualify. And so I think under that guidance, that would fit more neatly within your hypothetical. And the facts in your hypothetical do our attention with the bright line rule from Samaru and Files. But I do think that consistent with the holdings in Samaru and Files, that answers the issues in this case. Yeah, well, ERISA certainly depends on there being bright line rules to guide everybody. Right. And I think underpinning those bright line rules is, you know, Samaru and Files, those holdings allow a plan to understand, estimate, and account for its actual liabilities, which if allowing an ex-spouse to come back years to five, ten years after the fact to obtain benefits against no less a prior divorce decree where she's waived all of those benefits, that would turn the plan's funding calculations on its head. So unless the court has any questions. Thank you. Thank you. Thank you both.